IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                               No. 08-MJ-58

RICHARD J. HERMANN,

        Defendant.

## FINDINGS OF FACT ON MOTION FOR DETENTION

THIS MATTER came before the Court on a probable cause hearing on a criminal complaint and on Plaintiff's Motion for Detention [Doc. 7]. After being advised of his rights, Defendant Richard J. Hermann ("Hermann") waived his probable cause hearing with the knowledge that the waiver would result in a finding of probable cause. The Court considered the government's evidence on the motion for detention, as well as Defendant's proffer, and determines that there is clear and convincing evidence as follows:

    1. Richard J. Hermann ("Hermann") was involved in a domestic relation's dispute in a case being heard by Second Judicial District Court State Judge Nan Nash.

    2. Hermann was aggrieved by the results of Judge Nash's ruling and unsuccessfully sought to appeal her decision. He contends that the court's ruling cost him $400,000.

    3. There is probable cause to believe that on January 8, 2008, Hermann sent an e-mail message via the Internet, which was routed through servers located out of New Mexico, delivered to various recipients within the State of New Mexico, including several judges and a law professor.

4. The e-mail message referred to a mediation class which Judge Nan Nash was scheduled to teach at the University of New Mexico. It stated in part that the Law School had not responded to the sender's earlier communication related to preventing Judge Nash from teaching. The message further stated:

> I will be the one in the front row wearing the "Nan Nash is a lying beach" t-shirt. I also may be carrying a baseball bat so when she starts spewing her lies and teaching the members of the class how to screw the public I will likely get very upset and would find it useful to have such an instrument to use on her. She screwed me out of nearly $400,000; I think a few days in jail for battery would be highly worthwhile and enjoyable given the circumstances.

The e-mail continued, "I may be forced to carry more serious weaponry . . . ."

5. After referring to a gun he owns, the e-mail states, "If I were to consider any sort of violent behavior I would only consider doing such as face to face and would never put anything like that in writing."

6. Hermann's e-mail, after referring to his gun, states, "Having eight rounds doesn't seem like much. Fifteen rounds with two extra clips is much better, just in case you need it."

7. The e-mail described Judge Nash's residence, including neighborhood features, and made reference to the judge's family, evidencing that the writer of the e-mail had investigated and obtained information about the judge's home, its location and her family.

8. This e-mail also accused the Chief Justice of the New Mexico Supreme Court, Ed Chavez, Chief Judge Lang and others of not having performed their duties in reference to Hermann's appeal of the ruling from Judge Nash's court.

9. There is probable cause to believe that Hermann, thereafter, left a voice mail at Chief Justice Chavez's chambers identifying himself as Richard Hermann. The voice mail stated:

> I've been sending some e-mails to Justice Chavez and, I sent him a very important one last night. I would like to ask Justice Chavez to

> contact the other parties on that e-mail, such as Judge Nash in Albuquerque, and make sure that all of the parties that are involved are aware that they shouldn't do anything foolish regarding the e-mail. I'm not going to do anything rash unless I'm provoked, so as long as they don't do anything to provoke me, then they'll be, you know, nothing bad that's gonna happen, so they just need to keep a sane head and Justice Chavez and Judge Nash need to consider their options and let me know what they want to do.

10. This voice mail was transmitted to Justice Chavez via a telecommunication instrument.

11. Upon receipt of these threats, law enforcement authorities were notified and Judge Nash and her family were provided with police protection by the Bernalillo County Sheriff after the graphic nature of the threats and the specific mention of her home address and family members.

12. The fact that Hermann's e-mail included Judge Nash's residential address, information on her neighborhood and family, as well as her work schedule, i.e., her mediation class, raises the inference that Hermann had been conducting a background search on Judge Nash. He also investigated and learned that Judge Nash was presenting a class on mediation at the UNM School of Law, as his e-mails made reference to these facts and to his efforts to stop her. These all appear to be the conduct of a stalker.

13. The e-mail statements include specific, graphic and deadly threats; and comments to the Chief Justice warn against provoking Hermann or "doing anything foolish."

14. At the time of his arrest, Hermann was armed with a fully loaded Glock 22 .40 caliber weapon; he had $3,000 in cash and a passport in a backpack in his vehicle. Thus, he had the means of escape, i.e., cash and a passport, if he chose to flee.

15. The threat of harm to Judge Nash, her family and to other court officers by an armed individual with the means to effect an escape demonstrates that Hermann poses an unreasonable risk of harm and flight.

16. The Pretrial Services report notes that Hermann has a history of alcohol abuse and, given the nature of the crime, the risk of harm, Pretrial recommends detention.

The Court concludes that Hermann posed an unreasonable risk of harm and of flight. The Court determines that Hermann should remain in custody pending further proceedings, as there are no conditions under which he can reasonably be released.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge